IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

BRANDON PETTIT,

    Defendant.

Case No. 1:24-cr-330-3-BAH

### BRANDON PETTIT'S POSITION ON SENTENCING

Brandon is 72 years old. He is a good person who has lived a respectable life built on individual responsibility, hard work, family values, and kindness. He comes before this Court for sentencing, after pleading guilty to the misdemeanors of disorderly conduct in a Capitol building and picketing in a Capitol building.[1] The Probation Office recommends a sentence of 12 months of probation.[2] ECF #51 at 1.

### The Offense Conduct

On January 6, 2021, Brandon entered the Capitol late in the day, at 3:21 p.m., and remained at or near the doorway for 58 seconds. PSR ¶ 18. He stepped inside, huddled against the wall to avoid being pushed further into the Capitol, and then exited. On the video footage, attached as Exhibit 3, there is visible apprehension in Brandon's face and body language.[3] On that day, Brandon was elderly, had limited mobility (he had a bad knee, which was fully replaced this year), and was experiencing panic attacks (a condition he's struggled with for over 40 years, PSR

---

[1] In violation of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G), respectively.
[2] Due to the less-serious nature of these offenses (as "petty offenses"), the sentencing guidelines do not apply. PSR ¶¶ 25, 28, 73, 76, 77.
[3] In the video, Brandon is the man at 00:45 huddling against the wall near the doorway, in the center of the screen.

¶ 46.). He didn't want to go to the Capitol, and he told his companion David Mulsteff that, but Brandon didn't know where their car was (they had parked in Virginia) and didn't want to be alone and separated from the younger guys he was with (Mulsteff, and Oliver, Mulsteff's friend).

An FBI report concludes that "[n]o evidence has been found suggesting [Brandon] was violent or disorderly in any way."[4] The report also confirms that Brandon was inside the building for 58 seconds.[5] The FBI searched Brandon's phone records, emails, and social media; it found nothing connecting him to other co-conspirators, violence, property destruction, or anything of the sort. Brandon made no statements justifying his conduct. Rather, he was embarrassed and contrite. As can be seen on the video footage, Brandon is a slight man[6] and was dressed normally—in jeans, with an unmarked long-sleeve shirt and an unmarked winter vest (and, at times, a COVID-19 mask).

<u>Brandon's Acceptance of Responsibility over the Last Four Years</u>

Over the last nearly four years, Brandon has been fully cooperative. He voluntarily talked with law enforcement and was as remorseful and helpful as he could be. FBI reports note that Brandon "sa[id] he wished he had not attended the rally and would cooperate with authorities. [He] showed Agents photos and videos from his cell phone which he took while outside of the Capitol and advised he would provide these to the FBI."[7] Another FBI report notes that he

---

[4] FBI Capitol Riots Case Submission 266T-RH-3411734.
[5] *Id.* ("Official CCTV footage requested from Capitol Police shows Pettit inside the building for 58 seconds.").
[6] Per PSR ¶ 40, he is 5 feet, 7 inches tall and weighs 170 pounds.
[7] FBI-302 detailing interview on May 24, 2021.

"reassured reporting Agent that he is happy to cooperate and willing to meet again to provide cell phone photographs and videos to the FBI."[8]

Both before and after he was charged, Brandon experienced extreme anxiety over what happened that day. He pleaded guilty at the earliest available opportunity—his arraignment. He hasn't drug out this proceeding in any way, shape, or form and, in fact, has actively pushed the case forward so he can be sentenced before this year's election, in order to atone for his mistakes. He has abided by all terms of his personal recognizance bond. PSR ¶ 7, ECF #51 at 1.

<u>The U.S. Attorney's Office Initially Declined to Prosecute Brandon</u>

Of all the January 6 defendants the government has prosecuted, Brandon is among the least culpable, if not the least culpable. Indeed, in the fall of 2022, Assistant United States Attorney and Senior Litigation Counsel Mona Furst declined to prosecute Brandon, after consultation with her supervisors.[9] An FBI report reads: "The evidence was presented to AUSA Mona Furst who then coordinated with her supervisors. After both AUSA Furst and her supervisors reviewed the evidence, the USAO responded and has declined to pursue charges against Brandon Pettit." Ex. 2 at 4. AUSA Furst then removed Brandon from the criminal complaint charging his co-defendants Mulsteff and Oliver. That decision should have stood.

---

[8] FBI-302 detailing interview on May 25, 2021.
[9] Senior Litigation Counsels in a U.S. Attorney's Office are highly experienced attorneys responsible for overseeing complex cases and mentoring less experienced attorneys. Job listings on the DOJ website notes that successful candidates will have "significant trial experience (more than 15 years preferred)." *See, e.g.*, https://www.justice.gov/legal-careers/job/trial-attorney-senior-litigation-counsel. In Ms. Furst's case, it appears she graduated from law school over 40 years ago.

Instead, over 19 months later, with no new evidence, a new prosecutor decided to reopen the case and bring charges against Brandon.

The Justice Manual, 9-27.230, counsels that, in determining whether a prosecution should be initiated, the attorney for the government should weigh all relevant considerations, including federal law enforcement priorities, the nature and seriousness of the offense, the deterrent effect of prosecution, the person's culpability in connection with the offense, the personal's criminal history, the person's willingness to cooperate in the investigation, the person's personal circumstances, the interests of victims, and the probable sentence if the person is convicted.  Per the Justice Manual, the decision with regard to each putative defendant must be made "based on an individualized assessment of the facts and circumstances of each case." 9-27.001. Based on these principles of federal prosecution, the case against Brandon does not pass muster, as AUSA Furst and her supervisors concluded in 2022.

In justifying its prosecution of Brandon, the government writes, in its sentencing memorandum, "some amount of punishment is necessary to deter him from committing future crimes," including "the potential for a repeat of January 6." ECF #55 at 9. That is not a reasonable conclusion drawn from the facts of this case and this man.

Brandon as a Person

Brandon is a lifelong resident of Virginia with no criminal history whatsoever. PSR ¶ 37. He has a wife of 47 years, two successful sons, and five grandchildren. PSR ¶ 35. His wife, Donna, describes Brandon "as a very kind, nurturing, hardworking man . . . [who] works to give to underprivileged people and that he is very timid; not an aggressor at all, a good guy, and easy

to live with." PSR ¶ 36.

Brandon and his wife, Donna, regularly care for their grandchildren during the week and in the summertime, because their parents work and otherwise the children would need to be enrolled in daycare and/or after-school care. PSR ¶ 36. For instance, over the course of the past two months, they've watched their grandchildren at least 3-4 times per week. Indeed, some years ago, their daughter-in-law Melinda died. Their granddaughter, Mason, moved in with Brandon and Donna for over a year, while her father healed from the loss.

Brandon has been sober since 2008. PSR ¶ 46. He's worked hard his whole life, PSR ¶¶ 52-57. He spent most of his career as a homebuilder in Richmond, where he established a reputation for honesty and quality. Since 2009, he's run a kettle corn business, which has allowed him to donate approximately $375,000 to wounded veteran organizations. PSR ¶ 54.

The letters attached as Exhibit 1 speak for themselves. Brandon's son, Grayson, writes, "[t]here are very few people in the world [who] can write about their father with as much pride as I can." He writes about how his dad, Brandon, always did the right thing and "built a legacy not based on wealth but based on giving, love and family." The retired General Manager of Bass Pro Shops in Ashland, Virginia, details how Brandon, through his kettle corn stand, raised hundreds of thousands of dollars for wounded warriors and is "exceptional, honest, and generous to a fault." A man who lived with Brandon for four summers, while he was playing for a collegiate baseball team, writes that "Brandon is well-known . . . and respected by all" and attests that "[h]is character is that of someone with integrity and dependability." Ralph Costen, who had a longstanding business relationship with Brandon, calls him "a person of immense kindness and

5

compassion." Finally, Alexandra Seay, who volunteered with Brandon at his kettle corn stand from ninth grade through college, calls Brandon "loyal, kind, generous, encouraging, loving" and someone who "invests in the future generation, one kettle corn bag at a time."

## Avoiding Unwarranted Sentencing Disparities

In *United States v. Doyle*, 1:21-cr-324-TNM, the Court sentenced the defendant to 60 days of probation. In that case, according to the government, the defendant entered the Capitol through a broken window, stayed inside for 24 minutes, chanted and yelled at police, photographed the destruction, and texted a video of the riot to another individual more than a month later. ECF #27 at 1-2.

In *United States v. Cordon*, 1:21-cr-269-TNM, the Court also sentenced the defendant to 60 days of probation. In that case, according to the government, the defendant saw rioters fighting with police, entered the Capitol soon after the breach through a window, and was dressed in preparation for violence by dawning a vest of body armor and carrying a gas mask. ECF #31 at 1-2.

In both of those cases, the government asked for a stiffer sentence than they do here, which is understandable given the more serious conduct.

## Witness List and Exhibit Index

Per this Court's Standing Order, Brandon provides a witness list and exhibit index.

At sentencing, Brandon's wife of 47+ years, Donna Pettit, would like to address the Court to discuss Brandon's personal history and characteristics, as well as his remorse.

Additionally, here is an index of the exhibits submitted with this memorandum:

| Exhibit No. | Description | Other |
|---|---|---|
| 1 | Character letters | Attached to this memorandum |
| 2 | FBI reports | Filed under seal, pursuant to government request |
| 3 | Video | Mailed to the Court |

<u>Conclusion</u>

In sum, upon holistic consideration of Brandon and his offense, a sentence of a term of 45 days of probation, in addition to $500 of restitution, is sufficient, but not greater than necessary, to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

Thank you,

BRANDON PETTIT
By Counsel

By:

/s/ *[signature]*
Elizabeth L. Van Pelt
*Virginia Bar No. 82750*
*Delaware Bar No. 6117*
*District of Columbia Bar No. 1615865*
libbey@libbeyvanpeltlaw.com
LIBBEY VAN PELT LAW, PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
(571) 356-9066

7

**CERTIFICATE OF SERVICE**

I certify that on October 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends a notification of filing (NEF) to all counsel of record.

/s/ *[signature]*
Elizabeth L. Van Pelt